IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
          v.                      )          Criminal No. 05-26 Erie
                                  )
GEORGE L. EBERLE                  )
ALESHA M. EBERLE                  )

**GOVERNMENT'S RESPONSE TO
DEFENDANTS' OMNIBUS PRETRIAL MOTION
AND MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT**

AND NOW comes the United States of America, by and through its counsel, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Christian A. Trabold Assistant United States Attorney for said district, and states as follows:

I.    **INTRODUCTION**

Defendant George Eberle, is indicted with his wife and co-conspirator, Alesha Eberle, on four counts involving the sexual exploitation of children. Specifically,Counts I and II relate to the defendants' manufacture of child pornography when they took sexually explicit photographs of Mrs. Eberle's twelve-year-old half-sister. Counts III and IV relate to the defendants' receipt and possession of child pornography on their computer, which was discovered pursuant to the execution of a search warrant.

Mr. Eberle has filed an Omnibus Pretrial Motion in which he seeks to suppress evidence and obtain three different severances of trial. Mrs. Eberle has joined in her husband's motion, and

therefore, the government will respond herein to the arguments as appropriate to both defendants. With respect to the motion to suppress, the defendants argue that the search warrant affidavit, upon which the search of the Eberles' computer is based, omitted material facts and that the facts that were included were stale. The government submits these arguments are meritless and probable cause existed to conduct the search. Regardless, the government submits that the good faith exception applies and therefore suppression is not appropriate.

With respect to the defendants' motions to sever, they argue that they will be prejudiced unless Counts I and II are tried separately from Counts III and IV and unless Mr. Eberle is tried separately from Mrs. Eberle on Counts I and II and on Counts III and IV. Thus, the defendants are seeking four separate trials on the matters charged in the indictment. As demonstrated below, there is no prejudice that would inure to either defendant warranting a severance of counts or defendants.

Subsequent to filing his Omnibus Pretrial Motion, Mr. Eberle also filed a Motion to Strike Surplusage From the Indictment in which he seeks to strike facts alleged in support of Count I of the Indictment. In the interest of avoiding repetition of facts and/or arguments, the government will respond to Mr. Eberle's motion herein as well.

## II.  **FACTS**

On August 9, 2004, the legal department for Yahoo!, Inc. reported to the Cyber Tip Line for the National Center for Missing and Exploited Children (NCMEC)[1] that on September 2, 2001, a person using e-mail address "glepa2001@yahoo.com" uploaded to Yahoo! website "http://photos.yahoo.com/glepa2001" images of a child, who appeared to be under the age of eighteen, exposing her genitals while in a sexual act or pose.[2]  The NCMEC notified Lieutenant David Peifer of the Pennsylvania Internet Crimes Against Children (ICAC) Task Force located in Delaware County, Pennsylvania of Yahoo!'s report and forwarded to him the photographs containing suspected child pornography.  The photographs appeared to have been taken with a web camera.

Pursuant to a court order, Yahoo! provided subscriber information for e-mail address glepa2001@yahoo.com to Lieutenant Peifer, which contained identifying information provided by the

---

[1]NCMEC serves as the national resource center and clearinghouse working in partnership with the Department of Justice, the Federal Bureau of Investigation, the Department of the Treasury, the Department of State, and other law enforcement agencies in an effort to find missing children and prevent child victimization, including the sexual exploitation of children.  See 42 U.S.C. § 5771(5)(A)-(C).

[2]As an electronic communication service and a remote computing service, Yahoo! is required by federal law to report any facts or circumstances, from which a violation of federal law involving child pornography is apparent, to the Cyber Tip Line at the NCMEC, which in turn must forward the report to the appropriate law enforcement agency.  42 U.S.C. §13032 (b)(1).

subscriber when creating his account:

| | |
|---|---|
| Login Name: | glepa2001 |
| Full Name: | Mr george e |
| Address 1: | 404 S. Center St. |
| City: | Corry |
| State, territory or province: | PA |
| Zip/Postal Code | 16407 |
| Birthday: | October 5, 1978 |

According to Yahoo!, the e-mail account was created on July 9, 2001, was accessed on August 13, 2003, to change the password, and was deactivated as of the time of Lieutenant Peifer's request.

Upon receiving this information, Lieutenant Peifer referred the information to Erie County District Attorney's Office Detective Jessica Lynn of the Erie County Internet Crimes Against Children Task Force. Detective Lynn learned that although the residence at 404 South Center Street was now vacant, it was previously occupied by Mr. Eberle. Detective Lynn also learned from the Erie County Office of Children and Youth that Mr. Eberle's caseworker had observed a computer with a web cam in the living room of Mr. Eberle's residence and that he often talked about using the computer. However, on August 20, 2004, Mr. Eberle's computer was returned to House of Television for failure to pay his rental fee. Employees at House of Television "wiped" the hard drive, and the computer was re-rented to another customer.

On September 3, 2004, Detective Lynn obtained a search warrant for this computer and seized it from House of Television, which had retrieved it from the new customer. During her forensic examination, Detective Lynn did not find any child pornography, nor did she find any files relating to the Eberles in any manner, leading Detective Lynn to believe that either the "wipe" program used by House of Television was successful, or the computer was not the one rented by the Eberles.

On March 23, 2005, the Corry Police Department received a report that T.S., Mrs. Eberle's half-sister, was sexually assaulted by Mr. and Mrs. Eberle in August/September 2001, when T.S. was twelve years of age. A forensic interview of T.S. was conducted at the Children's Advocacy Center on March 24, 2005. During the interview, T.S. stated that when she was twelve, she spent several days at the Eberles' apartment in Corry, Pennsylvania. During her stay, Mr. Eberle frequently touched her breasts and buttocks while commenting on them.

One night while T.S. was sleeping on the couch, she awoke to find Mr. Eberle removing her pants. Mr. Eberle told T.S. that he wanted to have sex with her. T.S. pushed Mr. Eberle away telling him to leave her alone, and Mr. Eberle did not bother her the rest of the night. The following day, when T.S. told Mrs. Eberle about the incident, Mrs. Eberle told T.S. that Mr. Eberle had been telling her for some time that he wanted to have sex with

T.S.

The next evening, T.S. awoke to find that Mr. Eberle had pulled her pants and underwear down and had his mouth on her vagina and his tongue in her vagina. T.S. pushed Mr. Eberle away and ran into the bathroom where she locked the door, cried, and showered.

The following morning, Mrs. Eberle called T.S. into the Eberles' bedroom. Once in the bedroom, Mr. and Mrs. Eberle told T.S. to remove her clothing. Using a web camera, the Eberles took several photographs of T.S. in various states of undress as well as completely undressed. The Eberles also removed their clothes and showed T.S. the photographs they took of her on their computer. While she was naked, the Eberles told her to lie on the bed, whereupon Mrs. Eberle left the room and returned with a video camera. Mr. Eberle got on the bed with T.S. and made her put her hand on his penis, moving it up and down. Mr. Eberle then attempted to have sexual intercourse with T.S., but T.S. pushed him away and tried to stop him. At one point, Mrs. Eberle told Mr. Eberle to "give up" because T.S. was resisting, but Mr. Eberle said, "No, I'm almost done." Ultimately, Mr. Eberle overcame T.S. and had sexual intercourse with her, while Mrs. Eberle videotaped the assault.

Afterward, T.S. got dressed, went into the living room, and sat on the couch. Mrs. Eberle came into the living room and sat next to T.S., telling her she wanted to touch T.S. Mrs. Eberle

pulled down T.S.'s pants and began to rub T.S.'s vagina.  Mrs. Eberle then inserted two fingers into T.S.'s vagina and asked her if she liked it.  When Mrs. Eberle was finished, she warned T.S. not to tell anyone about what had happened.  Later that day, Mr. Eberle touched T.S.'s breasts and buttocks through her clothing, but did not attempt anything further.  Susequently, when T.S.'s ride arrived to pick her up, the Eberle's told T.S. not to tell anyone about what they had done because if T.S. did disclose what had happened, T.S. would be in big trouble.

T.S. also stated during the interview that in January 2005, she was on the computer in a Yahoo! chat room when she was contacted by an individual whom she discovered to be Mrs. Eberle. This brought back memories of the assault, and T.S. decided to disclose the assault to her mother.  T.S. told her mother that she could prove it, and she did so by having a three-way telephone call between herself, her mother, and Mrs. Eberle, unbeknownst to Mrs. Eberle.  During the conversation, T.S. and Mrs. Eberle discussed the sexual activity and T.S. asked Mrs. Eberle if she still had the video of Mr. Eberle having sex with T.S.  Mrs. Eberle said the tape was damaged and destroyed, but that if T.S. came over, they would like to make another video.  At some point during this telephone conversation, Mr. Eberle got on the phone and acknowledged the videotaping of the previous sexual assault of T.S. and expressed a desire to create another videotape with T.S.

After the interview, Detective Lynn and Erie County Detective Joseph Spusta spoke with T.S. Detective Lynn asked T.S. about any jewelry she may have worn at the time of the assault. T.S. stated that she always wore a silver ring, which had belonged to her grandmother, and that she usually wore a necklace. The detectives then showed T.S. the photographs that had been uploaded to the Yahoo! website by Mr. Eberle and asked T.S. if she could or could not identify the person. T.S. began to cry and positively identified the person in the photographs as her. T.S. stated that these photographs were the ones taken by the Eberles prior to Mr. Eberle having sex with her.

On March 28, 2005, Detective Lynn obtained a search warrant for the Eberles' residence, including their computer and other mediums capable of storing child pornography. The Eberles' computer was seized, and a subsequent forensic search revealed approximately 80 images of child pornography stored on it. The Eberles were subsequently charged in Erie County Court with sexually assaulting T.S., and they were indicted in federal court with the manufacturing and posession of child pornography.

III. **ARGUMENT**

A. **Response to Motion to Suppress**

The Eberles seek to suppress the images of child pornography found on their computer. Their argument is twofold: first, they argue that Detetive Lynn made material omissions of

fact from the affidavit.  Second, they argue that the warrant was not supported by probable cause because the information in the affidavit was stale.  As set forth below, neither of the defendants' arguments has merit.

### 1.    Material Omission of Fact

The Eberles argue that Detective Lynn failed to include two facts in her search warrant affidavit that constitute material omissions: (1) the Eberles had changed computers since the time when the child pornography images of T.S. were uploaded to the Internet; and (2) Detective Lynn had searched one of the Eberles' prior computers with negative results.  According to the Eberles' reasoning, if these facts had been included in the search warrant affidavit, there would not have been probable cause to believe that the child pornography manufactured by the Eberles in 2001 would be on the Eberles' current computer.  (Def. Brf., pp. 12-13).  The Government submits that if this Court takes the Eberles' arguments out of the vacuum which they have created, the search warrant affidavit, even if it had included these facts, still provided probable cause for the search of the Eberles' residence.

In reviewing the defendants' claims, this Court should not focus on the alleged omissions in isolation.  Rather, the Third Circuit has instructed that a supporting affidavit to a search warrant application must be read in its entirety and in a common sense and nontechnical manner.  United States v. Williams, 124 F.3d

411, 420 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1051 (1998). Indeed, the focus should be on what the affidavit includes, and not on what it does not include. <u>United States v. Jones</u>, 994 F.2d 1051, 1056 (3d Cir. 1993).

Furthermore, even where there is an omission from an affidavit, the affidavit may nevertheless support a valid warrant if, when the information is included in the affidavit, it still provides probable cause to search. <u>United States v. Frost</u>, 999 F.2d 737, 743 (3d Cir. 1993), <u>cert. denied</u>, 510 U.S. 1001 (1993). This is true even if the omission was made intentionally, knowingly, or with reckless disregard for the truth, because notably, a defendant must show *both* that the affiant acted in bad faith/reckless disregard *and* that there would have been no probable cause if the omitted information had been included. <u>Frost</u>, 999 F.2d at 742-43.

### 1. Omission of Change of Computers

First, the Eberles argue that Detective Lynn omitted from her affidavit the fact that she knew the Eberles had changed computers at least twice since the time they uploaded the child pornography pictures of T.S. to the Yahoo! website. (Def. Brf., p. 12). While Detective Lynn did not state that the Eberles had changed computers, she did state that based on her computer training and experience, "persons who use personal computers in their homes tend to retain their personal files and data for

10

extended periods of time even if a person has replaced, traded in or 'upgraded' to a new personal computer." She further explained that "personal computer users routinely transfer most of their data onto their new computers when making an upgrade. . . by saving files from the old computer to media sources (CDs or floppy disks, Zip drives, USB port device), then opening them onto the new computer and saving them to the new hard drive." (Search Warrant, p. 4, attached as Exhibit A). Thus, even if Detective Lynn had stated in the affidavit that the Eberles had changed computers, based on her opinion, which was included in the affidavit, it was more than likely that the Eberles would have transferred files from their old computer to their new computer.

Furthermore, as discussed more fully below, persons who have a sexual interest in children are not likely to destroy their collection of child pornography, but rather are likely to keep their collection for extended periods of time. Thus, even if Detective Lynn had stated in her affidavit that the Eberles had changed computers, it would not have changed the magisterial district judge's probable cause determination because it would still be more than likely that the Eberles had maintained their child pornography collection in one form or another, whether it be on their current computer hard drive, on disc, or printed photographs. In this vain, it is important to bear in mind that the search warrant was not just for the Eberles' computer, but also

11

included other storage media where child pornography would likely be found.

Nevertheless, the Eberles argue that this line of reasoning is undercut by the fact that Detective Lynn conducted a search of one of the Eberles' previous computers but did not find child pornography.

### 2. Omission of Prior Search of Computer

The Eberles assert that had Detective Lynn advised the magisterial district judge that she had conducted a forensic search of one of the Eberles' prior computers with negative results, there would not have been probable cause to believe child pornography would be found on the Eberles' current computer "because the chain of child pornography, so to speak, [would have] been broken." (Def. Brf., p. 13).

An analogous situation was addressed by the Third Circuit in a narcotics prosecution where the affiant to a search warrant omitted from his affidavit that a drug sniffing dog was exposed to, but did not alert to, the defendant's suitcase, which was found to contain narcotics during a subsequent search pursuant to a warrant. Frost, 999 F.2d at 743. The affiant stated that he did not feel that it was relevant to the magistrate's probable cause determination, because in his experience, drug couriers often mask the scent of drugs, as was done in this case. The affiant further explained that he did not omit the "non-alert" in an attempt to

mislead the magistrate, but rather viewed it as a neutral factor in the context of the probable cause determination. Frost, 999 F.2d at 743. If the non-alert would have been included in the affidavit, then the affiant would have also explained how drug couriers often conceal the scent of their illegal narcotics. Id.

In reviewing the search warrant affidavit, the Third Circuit found that even if the affidavit included the dog's non-alert to the suitcase and the fact that drug couriers often mask the scent of narcotics in suitcases, the failure to alert was not inconsistent with the substantial probative thrust of information that was in the affidavit. Frost, 999 F.2d at 744. Therefore, probable cause to search the suitcase remained, and suppression was not appropriate. Frost, 999 F.2d at 744.

Similarly, in the present case, Detective Lynn did not include in her search warrant affidavit that she had searched a computer, which had been seized from House of Television and was purportedly previously rented by the Eberles.[3] Detective Lynn was not trying to mislead the magistrate, but rather did not believe that this information was relevant to the district magistrate judge's probable cause determination, because after conducting a forensic search of the computer and finding no child pornography

_____

[3]It bears mentioning that the search warrant for the computer from House of Television was signed by the same magisterial district judge who signed the search warrant for the Eberles' residence. Therefore, the magisterial district judge was aware of the prior search.

and no connection to the Eberles whatsoever, she was not even certain that the computer she had searched was the one rented by the Eberles.

In fact, according to House of Television, the Eberles' computer had been "wiped" and re-rented. Although House of Television purportedly retrieved the Eberles' former computer from the new customers, after they had had it for a month, Detective Lynn was unable to ascertain for certain that this was in fact the Eberles' computer at one time. Furthermore, since the computer hard drive had been "wiped" of all files, it was of no surprise to Detective Lynn that she did not find any child pornography. Therefore, Detective Lynn did not think these facts were probative of whether or not there currently existed child pornography at the Eberles' residence.

Furthermore, the search warrant was for the entire Eberle residence and not just the Eberle's computer, whereas, the first search warrant was only for the computer that had been returned to House of Television. If anything, the fact that the Eberles had changed computers bolsters the belief that the child pornography would be found somewhere in the Eberles' residence. As computer users and child pornography collectors, it was more than likely that the Eberles had saved their child pornography from their old computer and transferred it to their new computer.

Clearly, Detective Lynn did not purposefully omit this

information in bad faith or with reckless disregard, and nevertheless, probable cause would have still existed even if this information had been included in the affidavit. Therefore, the Eberles have failed to satisfy both prongs needed to establish a material omission, and their motion to suppress on this basis should be denied.

### 2. Staleness

Second, the Eberles argue that the information used to establish probable cause for the search was stale because it was over three and one-half years old. (Def. Mtn., p. 14). To their detriment, the Eberles focus their argument solely on the information in the warrant concerning the uploading of child pornography to the Internet in September 2001, and the age of that information.

Although the age of information supporting a warrant application is a factor in determining probable cause, the determination is not merely an exercise in counting the time elapsed between the facts relied upon and the issuance of the warrant. <u>United States v. Harvey</u>, 2 F.3d 1318, 1322 (3d Cir. 1993) (citations omitted). Rather, the nature of the crime and the type of evidence must also be considered. <u>Harvey</u>, 2 F.3d at 1322 (citations omitted). Some types of evidence are more evanescent than others, i.e., narcotic drugs are consumable, whereas an illegal firearm is more apt to remain in one place for an extended

period of time.  United States v. Lamb, 945 F.Supp. 441, 460 (N.D.
N.Y. 1996).  "As one court put it, '[t]he hare and the tortoise do
not disappear at the same rate of speed.'" Lamb, 945 F.Supp. at 460
(citation omitted).

       This is particularly apropros in child pornography cases.
Child   exploitation   experts   opine   that   child   pornography
afficionados  are  loathe  to  part  with  or  dispose  of  child
pornography which they have collected, and typically retain these
obscene  materials  for  years.   Often  search  warrant  affidavits
contain a statement to this effect, and the courts have relied on
these opinions to find probable cause that child pornography will
likely be found at a suspect's residence, even when a significant
period of time has elapsed.  See e.g., United States v. Harvey, 2
F.3d 1318 (3d Cir. 1993).

       Likewise,  in  the  present  case,  the  search  warrant
affidavit contains a paragraph explaining the collection tendencies
of persons who have a sexual interest in children:

            Those  have  demonstrated  an  interest  or
            preference in sexual activity with children or
            in sexually explicit visual images depicting
            children  are  likely  to  keep  secreted,  but
            readily  at  hand,  sexually  explicit  visual
            images  depicting  children.  .  .  .  These
            depictions tend to be extremely important to
            such  individuals  and  are  likely  to  remain  in
            the  possesion  of  or  under  the  control  of  such
            an indiviual for extensive periods of time.  A
            person who has this type of material is not
            likely to destroy the collection.

(Search   Warrant   Affidavit,   p.   4,   attached   as   Exhibit   A).

16

Therefore, even though the child pornography was manufactured by the Eberles and uploaded from their computer in the Fall of 2001, history teaches us and the magistraterial district judge accepted, that it was likely that the Eberles still maintained these images in their child pornography collection.

Recognizing that the courts have accepted statements such as that contained in the affidavit at issue, however, the defendants attempt to circumvent this body of case law by arguing that although the affidavit contained Detective Lynn's opinion to this effect, she did not identify herself as an expert in the field of child exploitation, and therefore, her opinion should not have been accepted by the magisterial district judge.  The Eberles' argument is belied by not only common sense, but the case law.

As explained by the District Court for the Northern District of New York upon hearing a challenge to the hearsay opinion of an expert on child exploitation contained in a search warrant affidavit:

> The observation that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes is supported by common sense and the cases.  Since the materials are illegal to distribute and possess, initial collection is difficult.  Having succeeded in obtaining images, collectors are unlikely to quickly destroy them.  Because of their illegality and the imprimatur of severe social stigma such images carry, collectors will want to secret them in secure places, like a private residence.  This proposition is not novel in either state or federal court:

> pedophiles, preferential child molesters, and child pornography collectors maintain their materials for significant periods of time.

Lamb, 945 F.Supp. at 460 (citing United States v. Harvey, 2 F.3d 1318, 1322-23 (3d Cir. 1993); United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993); United States v. Rabe, 848 F.2d 994, 997 (9th Cir. 1988); United States v. Rakowski, 714 F.Supp. 1324, 1331 (D.Vt. 1987); Gregg v. State, 844 P.2d 867, 873 (Okla.Crim.App. 1992); People v. Russo, 439 Mich. 584, 487 N.W.2d 698, 704-06 (1992); State v. Petrone, 161 Wis.2d 530, 468 N.W.2d 676, 682, cert. denied, 502 U.S. 925 (1991); State v. Young, 37 Ohio St.3d 249, 525 N.E.2d 1363, 1372 (1988), rev'd on other grounds sub nom. Osborne v. Ohio, 495 U.S. 103 (1990); State v. Woodcock, 407 N.W.2d 603, 605 (Iowa 1987)).

The above citations are only a sampling of the numerous cases in which this concept has been accepted, demonstrating that it is widely recognized by the courts. Thus, the fact that Detective Lynn neglected to state her experience with child exploitation investigations in addition to her experience with investigating computer crimes is of no consequence.

Of course, in order to rely on such an opinion, the warrant must also contain sufficient information to conclude that the suspect is a pedophile, preferential child molester, or child pornography collector. The affidavit in this case is replete with such information. Mr. Eberle touched T.S. inappropriately a number

of times, he raped her while Mrs. Eberle videotaped the assault, Mrs. Eberle sexually assaulted T.S., and the Eberles took pictures of T.S. in various stages of undress as well as nude and uploaded those photographs to an Internet website. Moreover, when T.S. spoke with the Eberles more recently, they indicated their desire to make another video with T.S. All of this information was contained in the search warrant affidavit and more than sufficiently supported that the Eberles are child molesters and child pornography collectors. It follows that whatever child pornography the Eberles had collected would be found at their residence.

The Eberles make one last ditch effort at overcoming this well-established and widely accepted opinion that persons with a sexual interest in children keep their collection of child pornography for extended periods of time. They argue that the Third Circuit has accepted this expert opinion on "the presumption that 'individuals will protect and retain child pornography for long periods of time because it is illegal and difficult to obtain.'" (Def. Brf., p. 16) (quoting United States v. Zimmerman, 277 F.3d 426, 434 (3d Cir. 2002)). They then argue that the emergence of the Internet has now made child pornography available in "prolific proportions" and therefore there is no need to hoard child pornography.

The defendants' argument lacks merit. Just because child

19

pornography is now available on the Internet does not mean that it is any less illegal or any less difficult to collect. Accessing child pornography websites poses a siginificant risk to child pornography collectors because each time an individual accesses such a site, a traceable trail is created. Thus, each time a child pornography collector seeks to add to his collection, s/he exposes himself/herself to law enforcement detection. It follows, that once a collector has obtained child pornography, s/he is not likely to destroy it.

The Eberles' argument also ignores some of the basic characteristics of child pornography collectors. Such individuals have particular categories of child pornogrpahy, such as age group, gender, etc., that they prefer and collect. These individuals truly view there accumulation of child pornography as a collection, much like baseball cards that they can trade with other persons having the same interest. The spread of child pornography on the Internet does not change these basic characteristics, and the fact remains that child pornography collectors will retain their collection for significant periods of time.

Finally, in the present case, contrary to the defendants' argument, in addition to the detective's opinion, there is additional evidence vitiating any claim of staleness. Shortly before obtaining the warrant, T.S. contacted the Eberles, and her conversation with them disclosed that the Eberles still have a

sexual interest in children.  The fact that the Eberles wanted to manufacture new child pornography with the victim supports the opinion that there was likely child pornography in the Eberles' residence.  See United States v. Sherr, 400 F.Supp.2d 843, 847 (D. Md. 2005) (defendant's online chat 1 month prior to obtaining search warrant indicated defendant's continued interest in child pornography despite 8 month delay between defendant's receipt of child pornography and obtaining of warrant).

When considering the nature of child pornography crimes and all of the evidence contained in the warrant, there was more than enough probable cause to believe that child pornography would be found in the Eberles' residence.  Accordingly, the defendants' claim of staleness is meritless and his motion to suppress should be denied.

### 3.  Good Faith Exception

Even if this Court were to agree with the defendants' arguments and find that probable cause was lacking, the good faith exception, adopted in United States v. Leon, 468 U.S. 897 (1984), applies.  It is a general rule that evidence questions in federal criminal cases are to be decided based on federal, rather than state, law.  United States v. Rickus, 737 F.2d 360, 363 (3d Cir. 1984) (citations omitted).  Thus, evidence obtained in accordance with federal law is admissible in federal court even if it was obtained by state law enforcement officers in violation of state

law.[4] <u>Rickus</u>, 737 F.2d at 363-64 (citation omitted).

Under federal law, where there is no particularly novel Fourth Amendment issue, it is appropriate for a reviewing court to turn "immediately to a consideration of the officers' good faith." <u>United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents</u>, 307 F.3d 137, 145 (3d Cir. 2002). The rule of <u>Leon</u> and its progeny is that "the mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." <u>Leon</u>, 468 U.S. at 922; <u>United States v. Hodge</u>, 246 F.3d 301, 307-08 (3d Cir. 2001); <u>United States v. Loy</u>, 191 F.3d 360, 367-68 (3d Cir. 1999), <u>cert. denied</u>, 529 U.S. 1023 (2000); <u>United States v. Williams</u>, 3 F.3d 69, 73-74 (3d Cir. 1993).

Evidence obtained by law enforcement officers acting in good faith reliance on a search warrant is admissible even if the search warrant affidavit was insufficient to establish probable cause. <u>Williams</u>, 3 F.3d at 74; <u>United States v. Craig</u>, 861 F.2d 818, 821 (1988). Moreover, in the typical case, "an officer cannot be expected to question the magistrate's probable cause determination." <u>Williams</u>, 3 F.3d at 74.

---

[4]Rule 41 of the Federal Rules of Criminal Procedure is not implicated in this case because the warrant which was obtained was not a federal warrant. <u>United States v. Martinez-Zayas</u>, 857 F.2d 122, 136 n.9 (3d Cir. 1988). Furthermore, the federal government can use in its prosecution, evidence obtained pursuant to a search conducted by state officers pursuant to a state search warrant as part of a state investigation. <u>See</u> <u>United States v. Hall</u>, 678 F.Supp. 1172, 1173 (W.D. Pa. 1988).

Leon cited limited exceptions to the good faith exception. The Supreme Court noted suppression is still appropriate if:

> (1) the magistrate or judge issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;

> (2) where the magistrate wholly abandoned her judicial role in the warrant procedure and acted as an adjunct for the law enforcement officials;

> (3) where the warrant is based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and

> (4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid (such as failing to specify the place to be searched or the items to be seized).

Leon, 468 U.S. at 923. See also, Hodge, 246 F.3d at 308; Williams, 3 F.3d at 74, n.4.

None of these exceptions is applicable to this case. As previously discussed, Detective Lynn did not mislead the district judge nor did she act with reckless disregard for the truth. There is no evidence that the district judge abandoned her judicial role. Finally, there were no technical errors and the facts contained within the affidavit supported probable cause. Specifically, Mr. Eberle touched T.S. inappropriately a number of times, he raped her while Mrs. Eberle videotaped the assault, Mrs. Eberle sexually

23

assaulted T.S., and the Eberles took pictures of T.S. in various stages of undress as well as nude and uploaded those photographs to an Internet website.

Pursuant to <u>Leon</u>, even if the search warrant was not supported by probable cause, its mere existence suffices to prove that Detective Lynn conducted her search in good faith and justifies application of the good faith exception. Accordingly, the motion to suppress should be denied.

**B.   Response to Motions to Sever**

The Eberles seek to divide the indictment into four separate trials by having separate trials from each other and then separate trials on Counts I and II (the Manufacturing Counts) from Counts III and IV (the Possession Counts). Once properly joined purusant to Rule 8, a fact the defendants admit, separate trials of counts and/or defendants may only be ordered if the defendants would otherwise suffer prejudice. Fed.R.Crim.P. 14(a).

Motions for severance rest in the sound discretion of the trial judge, who is best situated to weigh possible prejudice to the defendants against the interests of judicial economy. <u>United States v. Reicherter</u>, 647 F.2d 397, 400 (3d Cir. 1981) (citations omitted). Mere allegations of prejudice, however, are not enough, and it is not sufficient simply to establish that severance would improve the defendants' chance of acquittal. <u>Reicherter</u>, 647 F.2d at 400.

24

In fact, there is a preference in the federal system for joint trials of defendants who are indicted together, because joint trials promote efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro, 506 U.S. at 537 (quoting Richardson v. Marsh, 481 U.S. 200, 209 (1987)).

### 1. Motion to Sever Counts I and II (Relating to the Manufacture of Child Pornography) from Counts III and IV (Relating to the Possession of Child Pornography)

The Eberles argue that they will be prejudiced if Counts I and II (Manufacturing Counts) are tried together with Counts III and IV (Possession Counts) because there is a "risk that the jury will consider the evidence in support of [the Manufacturing Counts] as substantive evidence in support of [the Possession Counts] and visa (sic) versa." (Def. Brf., p. 19). The Eberles' argument fails for one simple reason: the evidence in support of the Manufacturing Counts is admissible as evidence in support of the Possession Counts pursuant to Rule 404(b) of the Federal Rules of Criminal Procedure and vice versa.[5]

Under Rule 404(b), evidence of other crimes, wrongs, and acts is admissible to show proof of motive, opportunity, knowledge, intent, plan, preparation, identity or absence of mistake or

---

[5]The Government's argument with respect to the defendants' motion to sever counts is also submitted as the Government's Notice Pursuant to Rule 404(b) with respect to the evidence in support of each count.

accident.  Fed.R.Evid. 404(b).  In United States v. Long, 574 F.2d 761 (3d Cir. 1978), cert. denied, 439 U.S. 985 (1978), the Third Circuit reasoned that:

> The draftsmen of Rule 404(b) intended it to be construed as one of "inclusion" and not "exclusion."   They intended to emphasize admissibility of "other crime evidence."

Long, 574 F.2d at 766. See also, United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988), cert. denied, 488 U.S. 910 (1988); Government of Virgin Islands v. Edwards, 903 F.2d 267, 270 (3d Cir. 1988).

The test to determine the admissibility of other acts evidence was pronounced by the United States Supreme Court in Huddleston v. United States, 485 U.S. 681 (1988), and requires the satisfaction of the following criteria:

> [T]he evidence must have a proper purpose under Rule 404(b); (2) it must be relevant under Rule 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for which it is admitted.

Huddleston, 485 U.S. at 691-92.   See also, United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992); United States v. Console, 13 F.3d 641, 659 (3d Cir. 1993).

According to the Third Circuit, where the government seeks the introduction of other acts, it "must clearly articulate how that evidence fits into a chain of logical inferences, no link of which can be the inference that because the defendant committed

26

offenses before, he therefore is more likely to have committed this one." <u>Sampson</u>, 980 F.2d at 887. "Thus the government's burden is not onerous. All that is needed is some showing of a proper relevance." <u>Id.</u> at 888.

In <u>Government of Virgin Islands v. Pinney</u>, 967 F.2d 912 (3d Cir. 1992), the Third Circuit recognized where intent is an element of the crime, evidence of other acts tending to establish this element are certainly admissible. The facts of <u>Pinney</u> involved the rape of a young victim and the Government's attempt to introduce testimony from the victim's sister of the defendant's prior rape of the sister. Holding that the other acts evidence was admissible, the court stated:

> . . . As a matter of logic, it is at least
> marginally more likely that he (Pinney) did so
> intentionally if he had previous experience
> with intercourse.

<u>Pinney</u>, 967 F.2d at 915-916. <u>See also</u>, <u>Sampson</u>, 980 F.2d at 888. The rationale of <u>Pinney</u> can be applied in this case when determining whether the defendants acted knowingly and intentionally and not because of some accident, mistake or other innocent reason.

Likewise, in <u>United States v. Angle</u>, 234 F.3d 326 (7th Cir. 2000), <u>cert. denied</u>, 533 U.S. 932 (2001), the defendant was charged with attempted receipt of child pornography, possession of child pornography and attempted solicitation of a minor. Prior to trial the government provided notice, pursuant to Rules 403, 404,

413, and 414 of the Federal Rules of Evidence, of its intention to introduce the defendant's twenty-year-old sodomy conviction and ten-year-old child molestation conviction to demonstrate the defendant's intent to obtain child pornography. The Seventh Circuit held that it was not reversible error for the district court to admit evidence of these convictions. Id. at 342.

In the case at bar, the Government contends that the evidence that will be presented in support of the manufacturing counts is highly relevant evidence bearing directly on the critical issue of intent as to the child pornography counts and vice versa. The evidence concerning the manufacturing of child pornography and the evidence of the Eberles' possession of child pornography plainly establish that the Eberles were "motivated by a sexual desire attached to children."

Furthermore, the evidence in support of the manufacturing counts is admissible to show both the Eberles' intent to possess the child pornography in this case and the absence of any mistake in doing so. This evidence is also relevant to show motive that the Eberles' would be inclined to seek child pornography.

Therefore, the government submits that even if separate trials were to be had on the manufacturing counts and the possession counts, the evidence from each trial would nonetheless be presented as evidence necessary to prove elements of the crime in the other trial. Accordingly, there is no prejudice to the

defendants, and consequently no reason to sever the counts into separate trials. <u>See</u> <u>Reichenter</u>, 647 F.2d at 400 (Motion to sever counts denied where evidence pertaining to manufacturing of methamphetamine count would have been admissible in a trial on the distribution of methamphetamine counts purusant to Fed.R.Evid. 404(b)); <u>United States v. Thomas</u>, 610 F.2d 1166, 1169 (3d Cir. 1979) (Denial of motion to sever was proper where evidence of the acts alleged in each count would have been admissible under Rule 404(b) at the trials of the other counts to prove opportunity, preparation, plan, or knowledge).

Accordingly, the defendants' motion to sever counts should be denied.

### 2.    Motion to Sever Trial from Alesha Eberle on Counts I and II

Mr. Eberle argues that his trial should be severed from the trial of Mrs. Eberle on the manufacturing counts, because Mrs. Eberle has made incriminating statements, which pursuant to <u>Bruton</u>, cannot be admitted as evidence against Mr. Eberle.[6] Specifically, Mr. Eberle asserts that part of the evidence against Mrs. Eberle will be testimony from T.S. and her mother that during the three-way telephone conversation, Mrs. Eberle admitted that she and Mr.

---

[6]Although Mrs. Eberle has joined in Mr. Eberle's motion to sever their trials on Counts I and II, she has not set forth any reason why she would be prejudiced by a joint trial. Therefore, the only issue before the court is whether Mr. Eberle would be prejudiced, and if so, whether it is to a degree warranting severance of trial from his wife.

Eberle sexually assaulted T.S. and videotaped the assault. Mr. Eberle argues that such testimony would violate the holding in Bruton v. United States, 391 U.S. 123 (1968). (Def. Brf., p. 20).

In Bruton, the Supreme Court ruled that the Sixth Amendment's Confrontation Clause precluded the admission of a non-testifying co-defendant's facially co-implicating confession, because the effect of that evidence would make it extremely difficult for a jury to obey the trial court's limiting instruction to consider the evidence only against the co-defendant. Bruton, 391 U.S. at 126. However, the Supreme Court has since held that the Confrontation Clause is not violated and thus Bruton is not applicable when a nontestifying co-defendant's confession is redacted to eliminate any reference to the defendant and is admitted with a proper limiting instruction. Richardson v. Marsh, 481 U.S. 200, 211 (1987).

The government submits that it will redact from Mrs. Eberle's incriminating statements any reference to Mr. Eberle. This Court can then give a proper limiting instruction with respect to the testimony concerning Mrs. Eberle's statements. This would eliminate any Bruton concerns and comport with the rule of law set forth in Marsh. It follows that judicial economy would outweigh any potential prejudice to Mr. Eberle. As explained by Justice Scalia:

> It would impair both the efficiency and the
> fairness of the criminal justice system to

30

require, in all these cases of joint crimes where incriminating statements exist, that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability - advantages which sometimes operate to the defendant's benefit. Even apart from these tactical considerations, joint trials generally serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. [footnote omitted] The other way of assuring compliance with an expansive <u>Bruton</u> rule would be to forgo use of codefendant confessions. That price also is too high, since confessions "are more than merely 'desirable'; they are essential to society's compelling interest in finding, convicting, and punishing those who violate the law."

<u>Marsh</u>, 481 U.S. at 210.

Accordingly, the motion to sever trial from Alesha Eberle on Counts I and II should be denied.

### 3.   Motion to Sever Trial from Alesha Eberle on Counts III and IV

Mr. Eberle argues his trial should be severed from Mrs. Eberle on the possession counts because he will be prejudiced by evidence that will be introduced against Mrs. Eberle.[7]

---

[7] Again, although Mrs. Eberle has joined in Mr. Eberle's motion to sever their trials on Counts III and IV, she has not set forth any reason why she would be prejudiced by a joint trial. Therefore, the only issue before the court is whether Mr. Eberle would be prejudiced, and if so, whether it is to a degree

Specifically, the government will be offering into evidence Internet chats between Mrs. Eberle and others which display Mrs. Eberle's interests in pornography and sex. Mr. Eberle claims he will be severely prejudiced by this evidence since it is not admissible against him.

In support of his argument, Mr. Eberle cites <u>Zafiro v. United States</u>, 506 U.S. 534 (1993). <u>Zafiro</u> dealt with a request for severance on grounds of mutually antagonistic or irreconcilable defenses, an issue that is not raised in the present case. Mr. Eberle cites to dicta in <u>Zafiro</u> that severance under Rule 14 *might* be appropriate when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant. Mr. Eberle contends that this case presents the "exact situation hypothesized by the Supreme Court in <u>Zafiro</u>." (Def. Brf., p. 21).

To the contrary, a reading of the dicta in <u>Zafiro</u> discloses that the Supreme Court went on to give three specific examples in which this *might* take place:

> (1) "a complex case" involving "many defendants" with "markedly different degrees of culpability," (2) a case such as <u>Bruton v. United States</u>, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), where evidence that is probative of one defendant's guilt is technically admissible only against a co-defendant, and (3) a case where evidence that exculpates one defendant is unavailable in a

warranting severance of trial from his wife.

32

joint trial.

United States v. Balter, 91 F.3d 427, 432-33 (3d Cir. 1996) (citing Zafiro, 506 U.S. at 539). None of these examples is applicable to this case, and thus Zafiro does not support Mr. Eberle's argument.

In fact, contrary to Mr. Eberle's argument, "'[p]rejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant' or some evidence adduced is 'more damaging to one defendant than others.'" Balter, 91 F.3d at 433 (citing United States v. Console, 13 F.3d 641, 655 (3d Cir. 1993), cert. denied, 511 U.S. 1076 (1994)). When considering the contention that a disparity in evidence against co-defendants mandates severance, the court must determine whether the jury can reasonably be expected to compartmentalize the evidence as it relates to each defendant in light of its volume and limited admissibility. United States v. Sandini, 888 F.2d 300, 307 (3d Cir. 1989) (citing United States v. De Larosa, 450 F.2d 1057 1065 (3d Cir. 1971), cert. denied, 405 U.S. 927 (1972)).

In Sandini, the Third Circuit found important to its conclusion that there was no prejudicial spillover of evidence in a joint trial, that there were only two defendants and there was substantial independent evidence of each defendant's guilt. Sandini, 888 F.2d at 307-08. Likewise, in the present case, there are only two defendants, almost all of the evidence is admissible

33

against each of them, and there is substantial evidence of guilt against each of them. It is absurd to suggest that a jury would be unable to compartmentalize this one piece of evidence and consider it only against Mrs. Eberle pursuant to this Court's limiting instruction.

Mr. Eberle has not met his heavy burden of demonstrating that he will be prejudiced by the Government's joint trial of Mr. and Mrs. Eberle. In the interests of judicial economy, the motion to sever should be denied.

### C.    Response to Motion to Strike Surplusage[8]

Mr. Eberle seeks to strike facts alleged in support of Count I of the Indictment, charging him with conspiracy to coerce a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct. Recently, the Third Circuit set forth the test for striking surplusage from an indictment: "the court may strike surplusage from the indictment or information when it is **both** irrelevant (or immaterial) **and** prejudicial." United States v. Hedgepeth, ___ F.3d ___, 2006 WL 60665 at *3 (3d Cir. January 12, 2006) (emphasis added). In so doing, the Third Circuit also noted that motions to strike surplusage are rarely granted. Hedgepeth, 2006 WL 60665 at *2 (citations omitted).

_____

[8] Mrs. Eberle did not join in this motion as of the date of the Government's filing of its response.

The facts that Mr. Eberle seeks to strike are found at paragraphs 5, 6(e), and 6(f) of the indictment:

> 5.    It was further a part of the conspiracy that defendant GEORGE L. EBERLE then engaged in sexual intercourse with the minor female, while defendant ALESHA M. EBERLE videotaped the sexually explicit conduct with a video camera she had retrieved from another area of the residence.

> 6.    Defendants GEORGE L. EBERLE and ALESHA M. EBERLE did commit the following overt acts in furtherance of the conspiracy:

> . . .

> e.  From in and around August 2001 until in and around September 2001, the exact date being to this grand jury unknown, defendant GEORGE L. EBERLE engaged in sexual intercourse with the minor female.

> f.  From in and around August 2001 until in and around September 2001, the exact date being to this grand jury unknown, defendant ALESHA M. EBERLE videotaped defendant GEORGE L. EBERLE engaging in sexual intercourse with the minor female.

Mr. Eberle argues that these facts are irrelevant because the videotape is not the basis of the Government's manufacturing charge, and the "prejudicial nature of the surplusage is plain."

However, the facts Mr. Eberle seeks to strike are relevant to the conspiracy charge, because the sexual assault of T.S. is part of the Eberles' entire scheme to manufacture child pornography.  Mrs. Eberle called T.S. into the Eberles' bedroom, and Mr. and Mrs. Eberle told T.S. to remove her clothing.  The Eberles then used their web camera to take photographs of T.S. in

35

various states of undress as well as completely undressed. The Eberles also removed their clothes and showed T.S. the photographs they had just taken of her on their computer. Mr. Eberle then forced T.S. to have sexual intercourse with him, while Mrs. Eberle videotaped the assault. All of these facts are intertwined because they are part of the same act by the defendants.

Furthermore, the assault and videotaping demonstrate the Eberles' intent to manufacture child pornography, which is a necessary element of the crimes with which they are charged. Therefore, the facts are relevant to the indictment; whether or not they are prejudicial to Mr. Eberle, they cannot be struck from the indictment.

IV.  **CONCLUSION**

WHEREFORE, the government respectfully requests that this Court deny the defendants' motions to suppress, motions to sever, and motion to strike surplusage from the indictment.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney


/s/ Christian A. Trabold
CHRISTIAN A. TRABOLD
Assistant U.S. Attorney
PA ID No. 75013