# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | CRIMINAL NUMBER |
| VS. : | 05 – 26 ERIE |
| : | |
| ALESHA M. EBERLE, : | |
| DEFENDANT : | |

## MEMORANDUM IN SUPPORT OF *MOTION IN LIMINE*

The Government's attempt to introduce purported Internet chats between Alesha Eberle and others, which the Government claims displays her "interests in pornography and sex," is prohibited by the Federal Rules of Evidence.

## I.     An introduction to the nature of these Internet chats[1]

The Government has provided counsel with nine (9) separate Internet chat sessions. These sessions occurred between January 20, 2005 and March 21, 2005 at various times. The chat sessions are of various lengths, durations, and between numerous individuals.

None of the Internet chats contain admissions of wrong doing, solicitation of child pornography, or any other relevance to the four (4) counts contained in the Indictment. The contents of the chats range from a request for a phone call (chat of

---

[1] The entire transcripts of all chats will be provided to this Honorable Court at the time and in the manner it so directs. With public electronic filing and the length of the Internet chats (nearly 60 pages) providing hard copies to this Honorable Court seems most appropriate.

March 20, 2005 at 15:54:34 hours between we_r_bored2005 and daddy_gurl20052001)[2] to discussion, between adults, of being bi-sexual and interest in anal sex (chat of January 20, 2005 at 9:17:00 between tigger21_2004 and crazybirdsmoke).  These chats are inflammatory and prejudicial to the Defendant.  These chats have no bearing on any element of the alleged offenses.

For ease of understanding the nature of these chats, the full text of one of the chats is set forth below.  To make the reading of the chat simpler, omitted are the headers from each line (which provide exact detail of date, time, and sender) and various interruptions such as advertisements and disconnects[3].

**Chat of January 20, 2005 beginning at 9:17:00 between tigger21_2004 and crazybirdsmoke and ending at 09:41:17 hours:**

| | |
|---|---|
| tigger21_2004: | hi a/s/l |
| crazybirdsmoke: | 22f 26m kc |
| crazybirdsmoke: | hi sexxy |
| tigger21_2004: | hi |
| crazybirdsmoke: | asl |
| tigger21_2004: | 21/f/pa |
| crazybirdsmoke: | u show |
| tigger21_2004: | sometimes |
| tigger21_2004: | u |
| tigger21_2004: | are the two of u married |
| crazybirdsmoke: | no ru bi |

---

[2] The government will likely not even attempt to introduce this chat because it apparently contains nothing about an interest in "pornography and sex."  Alesha Eberle, however, will likely use it on cross-examination of the alleged victim to show that someone who was victimized in 2001 continued a friendly and cordial relationship – not the actions most people would expect from an alleged victim.  Therefore, counsel suggests that each one the nine chats be gone over individually to first determine whether the Government will seek its introduction.

[3] Some of this chat appears to be in code.  Counsel does not know this code so counsel cannot hazard a guess as to its meaning (although "21/f/pa" appears to mean 21 year old female in Pennsylvania).  To fully rule on this *Motion in Limine* the Government should be compelled to disclose what it believes these codes to represent (e.g. "22f 26m kc," "shel brb," etc.)

| | |
|---|---|
| tigger21_2004: | yes |
| crazybirdsmoke: | shel brb |
| tigger21_2004: | k |
| tigger21_2004: | I'm married if u don't mind |
| crazybirdsmoke: | no is he there |
| tigger21_2004: | sleeping |
| crazybirdsmoke: | u show |
| tigger21_2004: | maybe |
| crazybirdsmoke: | maybe |
| tigger21_2004: | I only show my tits |
| crazybirdsmoke: | y |
| tigger21_2004: | because in prgo |
| tigger21_2004: | and I'm not shaved |
| crazybirdsmoke: | she just had baby |
| crazybirdsmoke: | u r cute very |
| tigger21_2004: | ty |
| crazybirdsmoke: | can I c titts |
| tigger21_2004: | when she gets back |
| crazybirdsmoke: | ok |
| crazybirdsmoke: | u ever been w female |
| tigger21_2004: | yup |
| tigger21_2004: | what did she have? |
| crazybirdsmoke: | boy 2 months ago girl16 months age |
| tigger21_2004: | ok |
| crazybirdsmoke: | what u get in 2 |
| tigger21_2004: | everything |
| crazybirdsmoke: | like |
| tigger21_2004: | three ways |
| crazybirdsmoke: | nice |
| crazybirdsmoke: | more |
| crazybirdsmoke: | i like |
| crazybirdsmoke: | ass please |
| tigger21_2004: | nope |
| crazybirdsmoke: | ok |
| tigger21_2004: | I want to see her tits |
| crazybirdsmoke: | she is feeding she will in a min |
| crazybirdsmoke: | u like cock |
| tigger21_2004: | yes |
| crazybirdsmoke: | wanna c mine |
| tigger21_2004: | yes |
| crazybirdsmoke: | in a min ill make her suck it 4 u |
| tigger21_2004: | ok |
| crazybirdsmoke: | tell me u like 2 suck a mans cock while his woman watches |
| tigger21_2004: | yes |
| crazybirdsmoke: | u like it in ass |
| tigger21_2004: | no |

| | |
|---|---|
| crazybirdsmoke: | u swallow |
| crazybirdsmoke: | u c |
| crazybirdsmoke: | u c |
| crazybirdsmoke: | ass ass asds |
| crazybirdsmoke: | ewwwwww |
| crazybirdsmoke: | mmmmmmmmmmmmmmmm |
| tigger21_2004: | jack off |
| crazybirdsmoke: | show pussy |
| tigger21_2004: | no |
| crazybirdsmoke: | ass |
| crazybirdsmoke: | / |
| crazybirdsmoke: | / |
| crazybirdsmoke: | ? |
| tigger21_2004: | ? |
| crazybirdsmoke: | ass |
| crazybirdsmoke: | r u playing w pussy |
| crazybirdsmoke: | y u leave |
| crazybirdsmoke: | ok ill jasck off 4 u |

This chat and all the others have no relevance to this proceeding, are extremely prejudicial to Alesha Eberle, and should be ruled inadmissible.

## II.     The Federal Rules of Evidence

Under the Federal Rules of Evidence 401, 402, 403 and 404 (b) the Internet chats between Alesha Eberle and others are inadmissible.

### A.     Federal Rules of Evidence 401 and 402

Federal Rule of Evidence 401 states:

`"Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence."

Federal Rule of Evidence 402 states:

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible."

"[I]nterests in pornography and sex" are neither criminal nor relevant to this proceeding[4]. Adult conversations about sex are likewise neither criminal nor relevant.[5] To allow an interest in sex as relevant evidence in this trial, based upon the content of the Internet chats, would require a belief that anyone who has an interest in sex is criminal. These chats were between *two* people. Can this Honorable Court really believe that the other parties' participation in these chats somehow casts them as criminal? Two adults discussing sexual topics between them is of no value to the issues in dispute. The Government may have achieved the recovery of these chats from the seized hard drive, but recovery DOES NOT mean relevance.

Under Federal Rules of Evidence 401 and 402 the Internet chats are not admissible. The chats have no relevancy to "any fact that is of consequence to the determination of the action." None of the Internet chats contain admissions of wrong doing, solicitation of child pornography, or any other relevance to the four (4) counts contained in the Indictment.

---

[4] In **Reno v. American Civil Liberties Union**, 521 U.S. 844 (1997), the United States Supreme Court stated: "In evaluating the free speech rights of adults, we have made it perfectly clear that "[s]exual expression which is indecent but not obscene is protected by the First Amendment." **Sable**, 492 U.S., at 126, 109 S.Ct., at 2836. See also **Carey v. Population Services Int'l,** 431 U.S. 678, 701, 97 S.Ct. 2010, 2024, 52 L.Ed.2d 675 (1977) ("[W]here obscenity is not involved, we have consistently held that the fact that protected speech may be offensive to some does not justify its suppression"). Indeed, **Pacifica** itself admonished that "the fact that society may find speech offensive is not a sufficient reason for suppressing it." 438 U.S., at 745, 98 S.Ct., at 3038.

[5] A sexually explicit conversation between two adults where one adult asks another adult, and where both adults know or believe the other to be an adult, to perform in non-obscene pornography is protected by the free speech clause of the First Amendment. **United States v. Johnson**, 376 F.3d 689 (7th Cir., 2004).

**C.    Federal Rule of Evidence 403**

Federal Rule of Evidence 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

These Internet chats are prohibited from evidence under this rule.

The admission of homosexuality is still one of the most prejudicial admissions anyone can make.[6]

Whether young or old, prejudice against homosexuality is widespread. Just as recently as February 3, 2006 national headlines were reporting the brutal attack of homosexual patrons in a Bedford, MA bar. The Headlines declared *BRUTAL ATTACK AT NEW BEDFORD, MASS., GAY BAR: THREE INJURED SUSPECT ON THE RUN* and the story read:

> "Puzzles Lounge," in New Bedford, Mass., was thrown into turmoil in the early morning hours of Thursday, Feb. 2, when a young man violently attacked three patrons with a hatchet and gun.
>
> In news reports a bartender recounted the horrific ordeal. 18-year old Jacob D. Robida entered the bar, ordered a drink and then asked if the establishment was in fact a gay bar. When he was told that it was, he finished his drink and walked back to where two men were playing pool. Unprovoked, he pushed one of the men to the ground, pulled out a hatchet and began swinging at the man's head, cutting him.

---

[6] These chats are also prejudicial because of the nature of the chats in general. Furthermore, introduction of these chats would lead to confusion of the issues, misleading the jury, undue delay and a waste of time.

Other patrons attempted to stop the man, tackling him and sending the hatchet skidding across the floor. The attacker then pulled out a gun and fired several shots, hitting two other men. He then ran out of the bar. The hatchet that was used in the attacks as well as a knife, were recovered outside the bar. Three of the victims of the attack were rushed to the hospital with serious injuries. The suspect is still at large.

The severity and viciousness of this hate crime has sent shock waves throughout New Bedford and the entire region, and the Gay & Lesbian Alliance Against Defamation (GLAAD) is calling on the nation's media to carefully report this story.

"We are outraged by this vicious hate crime and call for all to stand up against the efforts of those who seek to divide us with their bigotry toward gay Americans," said GLAAD President Neil G. Giuliano. "This act of defamation highlights the need for all of us to do what we can to combat the hatred and bigotry our community still faces. It is important that as media from around the country cover this story, they do so accurately and with sensitivity."

The Bristol County District Attorney's Office issued a statement urging the media not to release the names of the victims. "Due to the sensitive nature of this case and at the request of some of the victims' family members, District Attorney Paul F. Walsh, Jr. is respectfully requesting that media outlets refrain from using the victims' names in news reports at this time. Your cooperation in this regard would be greatly appreciated."[7]

The prejudice against homosexuality does not only result in attacks, it even covers your treatment after the attacks. In a news report headlined *VICTIM IN GAY BAR ATTACK FILES COMPLAINT* the story, in part, read:

---

[7] http://www.glaad.org/publications/archive_detail.php?id=3862

> One of the men attacked in a gay bar by a hatchet-wielding teenager filed a complaint with the state alleging paramedics gave him substandard treatment because he is gay.
>
> Robert R. Perry was hit in the head with the hatchet and shot in the back by 18-year-old Jacob D. Robida, who later killed himself during a police chase. Two other men also were injured in the attack early Feb. 2 in Puzzles Lounge.
>
> In a complaint filed with the Massachusetts Department of Public Health, Perry says the New Bedford paramedics took too long taking him to a hospital, were physically and verbally abusive, and shared private medical information with his family without his permission.[8]

Regrettably, prejudice against homosexuality begins as early as the teenage years. According to the Gay and Lesbian Alliance Against Defamation's *How Youth Media Can Help Combat Homophobia Among American Teenagers*:

> Gay, lesbian, bisexual, and transgender teenagers experience a staggering level of suffering because of the negative feelings toward them that exist among their straight peers. One study found that an astonishing 80 percent of all lesbian and gay young people had been cursed at or otherwise verbally abused, 31 percent had been chased or followed by potential attackers, and 17 percent had been the victims of physical assault because of their sexuality. Homophobia among American teenagers is so widespread, in fact, that researchers estimate that gay, lesbian, bisexual, and transgender youths attempt suicide two to six times as often as straight youths.[9] (Citations omitted)

The admissions of homosexuality are prejudicial. These Internet chats should be ruled inadmissible.

---

[8] http://www.phillyburbs.com/pb-dyn/news/1-02142006-612854.html

[9] http://www.glaad.org/documents/csms/YouthReport.pdf at page 9.

**D.      Federal Rule of Evidence 404 (b)**

Federal Rule of Evidence 404 (b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

The Third Circuit Court of Appeals, in *United States v. Cross*, 308 F.3d 308, 320 (2002) stated of Rule 404 (b):

To satisfy Rule 404(b), evidence of other acts must (1) have a proper evidentiary purpose, (2) be relevant under Rule 402, (3) satisfy Rule 403 (i.e., not be substantially more prejudicial than probative), and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105, that instructs the jury not to use the evidence for an improper purpose. *See* United States v. Butch, 256 F.3d 171, 175 (3d Cir.2001); United States v. Mastrangelo, 172 F.3d 288, 294-95 (3d Cir.1999). "Other acts" evidence satisfies the first two requirements if it is "probative of a material issue other than character." Huddleston v. United States, 485 U.S. 681, 685, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). In other words, there must be an articulable chain of inferences, " 'no link of which may be the inference that the defendant has the propensity to commit the crime charged,' " connecting the evidence to a material fact. Becker v. ARCO Chem. Co., 207 F.3d 176, 191 (3d Cir.2000) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir.1999)); see also United States v. Echeverri, 854 F.2d 638, 644 (3d Cir.1988) (stating that the "chain of logic must include no link involving an inference that a bad person is disposed to do bad acts"). (Footnotes omitted)

The internet chats, as shown in the sections above, do not have a proper evidentiary purpose, are not relevant under 402, fail to satisfy 403 because of their clearly prejudicial nature, and are inadmissible. The internet chats also fail because the

"chain of logic must include no link involving an inference that a bad person is disposed to do bad acts." The only connection the Government has between these internet chats and the alleged offenses is an inference that someone who chats about sex on the internet (thereby supposedly showing an interest in "pornography and sex") must be "disposed to do bad acts." Such a chain of logical inferences is faulty[10] and strictly prohibited.

## III.   Conclusion

For the reasons stated above, the Government should be prohibited, at trial, from introducing these Internet chats into evidence.

Respectfully Submitted,

/s/ Michael R. Hadley, Esq.
Michael R. Hadley, Esq.
(Pa. S. CT. ID # 80054)
One Drake Drive
Oil City, PA 16301
(814) 676-3330

---

[10] The Government is faulty to believe that an interest in "pornography and sex" is a indication of criminal character.  According to http://healthymind.com/s-port-stats.html (citing www.internetfiltereview.com/internet-pornography-statistics. html) for 2003 the "Sex Industry" had 57 billion in revenues world-wide (12 billion of which was related to internet porn).  "Porn on the Web" was rampant!  25% of total search engine request are porn-related (Top three searches are sex, mp3 and hotmail), 8% of total emails are porn-related, the average daily pornographic emails are 4.5 per internet user and 12% of total websites are pornographic.